UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | | |
|---|---|---|
| DWIGHT D. D., | ) | No. SA CV 20-7-PLA |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW M. SAUL, COMMISSIONER | ) | |
| OF SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

**I.**

**PROCEEDINGS**

Dwight D. D.[1] ("plaintiff") filed this action on January 2, 2020, seeking review of the Commissioner's denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before a Magistrate Judge on January 21, 2020, and January 31, 2020. Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on September 23, 2020, that addresses their positions concerning the disputed

---

[1]    In the interest of protecting plaintiff's privacy, this Memorandum Opinion and Order uses plaintiff's (1) first name and middle and last initials, and (2) year of birth in lieu of a complete birth date. See Fed. R. Civ. P. 5.2(c)(2)(B), Local Rule 5.2-1.

issue in the case.  The Court has taken the Joint Submission under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born in 1953. [Administrative Record ("AR") at 145, 496.] He has past relevant work experience in the composite job of office machine repairer and bookkeeper. [Id. at 496, 524-25.]

On May 1, 2012, plaintiff filed an application for a period of disability and DIB alleging that he has been unable to work since January 1, 2010.  [Id. at 598; see also id. at 145-46.]  After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [Id. at 104-05.]  A hearing was held on April 2, 2014, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [Id. at 35-60.]  A vocational expert ("VE") also testified. [Id. at 53-59.]  On April 23, 2014, the ALJ issued a decision concluding that plaintiff was not under a disability from January 1, 2010, the alleged onset date, through April 23, 2014, the date of the decision. [Id. at 20-30.]  Plaintiff requested review of the ALJ's decision by the Appeals Council, which was denied on September 2, 2015. [Id. at 11-15.]  Plaintiff then filed an action with this Court in case number SA CV 16-132-PLA, and on November 8, 2016, this Court remanded the matter. [Id. at 570-85; see also id. at 590-94 (Appeals Council Remand Order).]  On October 25, 2017, a remand hearing was held before the same ALJ, at which time plaintiff again appeared represented by an attorney and testified on his own behalf. [Id. at 504-31.]  A different VE also testified. [Id. at 524-29.]  On December 6, 2017, the ALJ issued a decision again concluding that plaintiff was not under a disability from January 1, 2010, the alleged onset date, through December 6, 2017, the date of the decision. [Id. at 488-98.]  Plaintiff again requested review of the ALJ's decision with the Appeals Council, which was denied on November 4, 2019. [Id. at 478-84.]  At that time, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.984.  This action followed.

/

2

**III.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means -- and means only -- 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017).  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  Revels, 874 F.3d at 654 (internal quotation marks and citation omitted).  However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence."  Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)).  The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."  Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed.  626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

**IV.**

**THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

1  **A.     THE FIVE-STEP EVALUATION PROCESS**

2          The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

3  whether a claimant is disabled.   20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468

4  F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

5  In the first step, the Commissioner must determine whether the claimant is currently engaged in

6  substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Lounsburry,

7  468 F.3d at 1114.   If the claimant is not currently engaged in substantial gainful activity, the

8  second step requires the Commissioner to determine whether the claimant has a "severe"

9  impairment or combination of impairments significantly limiting his ability to do basic work

10 activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has

11 a "severe" impairment or combination of impairments, the third step requires the Commissioner

12 to determine whether the impairment or combination of impairments meets or equals an

13 impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P,

14 appendix 1; if so, disability is conclusively presumed and benefits are awarded.   Id.   If the

15 claimant's impairment or combination of impairments does not meet or equal an impairment in the

16 Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient

17 "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the

18 claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform past

19 relevant work.  Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).  If the claimant meets

20 this burden, a prima facie case of disability is established.  Id.  The Commissioner then bears

21 the burden of establishing that the claimant is not disabled because there is other work existing

22 in "significant numbers" in the national or regional economy the claimant can do, either (1) by

23 the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part

24 404, subpart P, appendix 2.  Lounsburry, 468 F.3d at 1114.  The determination of this issue

25 comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920;

26 Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

27 /

28 /

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 1, 2010, the alleged onset date.[2]  [AR at 490.]  At step two, the ALJ concluded that plaintiff has the severe impairments of diabetes mellitus with neuropathy; arthritis; successful cataract surgery of the right eye, but loss of some vision in the left eye; paresthesia and pain in both feet; rotator cuff and tendonitis of the right arm; dizziness and past strokes; degenerative disc disease; and atrial fibrillation.  [Id. at 491.]  At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing.  [Id. at 492.]  The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform medium work as defined in 20 C.F.R. § 404.1567(c),[4] as follows:

> [Can] occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; can climb stairs, but cannot climb ladders[,] ropes or scaffolds; occasional overhead reaching with right upper extremity; no jobs requiring depth perception for safety purposes; no jobs requiring left peripheral vision; no work at unprotected heights or around moving and dangerous machinery; and frequent fine and gross manipulation bilaterally.

[Id.]  At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform his past relevant work in the composite job of office machine repairer and bookkeeper.  [Id. at 496, 524-25.]  At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the

---

[2]    The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2018.  [AR at 490.]

[3]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4]    "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  A full range of medium work requires that a person be able to stand or walk, off and on, for a total of approximately six hours of an eight-hour workday. SSR 83-10; Candia v. Sullivan, 959 F.2d 239, 239 (9th Cir. 1992).  If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 404.1567(c).

national economy that plaintiff can perform, including work as a "laundry worker" (Dictionary of Occupational Titles ("DOT") No. 361.684-014), and as a "cleaner, hospital" (DOT No. 323.687-010). [AR at 526-28.]   Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of January 1, 2010, through December 6, 2017, the date of the decision.  [Id. at 498.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when she determined plaintiff's RFC. [JS at 5.]  As set forth below, the Court agrees with plaintiff and remands for further proceedings.

## A.    LEGAL STANDARD

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  Soc. Sec. Ruling ("SSR")[5] 96-9p, 1996 WL 374184, at *1 (1996).  It reflects the most a claimant can do despite his limitations.  See Smolen v. Chater, 80 F.3d 1273, 1291 (9th Cir. 1996).  An RFC must include an individual's functional limitations or restrictions as a result of all of his impairments -- even those that are not severe (see 20 C.F.R. § 404.1545(a)(1)-(2), (e)) -- and must assess his "work-related abilities on a function-by-function basis."  SSR 96-9p, 1996 WL 374184, at *1; see also Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective").  An ALJ errs when she provides an incomplete RFC ignoring "significant and probative evidence."  Hill v. Astrue, 698 F.3d 1153, 1161-62 (9th Cir. 2012) (further noting that the error is not harmless when an ALJ fails to discuss significant and probative evidence favorable to a claimant's position because when the RFC is incomplete, the

---

[5]    "SSRs do not have the force of law.  However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs if they are inconsistent with the statute or regulations."  Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

hypothetical question presented to the VE is incomplete and, therefore, the ALJ's reliance on the VE's answers is improper).   An RFC assessment is ultimately an administrative finding reserved to the Commissioner.   20 C.F.R. § 404.1527(d)(2).   However, an RFC determination must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians.  Id. § 404.1545.  A district court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005); Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

## B.   BACKGROUND

Plaintiff argues that the ALJ erred in formulating the RFC.  He states that three and one-half years after the initial hearing, the ALJ in this action "found that [plaintiff] suffered from the exact same severe impairments as previous[ly] found *plus atrial fibrillation* and acknowledged additional treatment and x-ray findings."  [JS at 6 (emphasis in original) (citing AR at 22, 491).]  He then asserts that the ALJ found that plaintiff "retained the *exact same residual functional capacity*" "despite the presence of the additional severe impairment and three and half [sic] years of medical treatment."  [Id. (emphasis in original).]  Plaintiff also notes that the ALJ -- as she did in her 2014 decision -- again gave significant weight to the August 25, 2012, opinions of the consultative examiner, and to the October 25, 2012, and May 16, 2013, opinions of the State agency reviewing consultants.  [Id. at 6 (citing AR at 495-96).]  Plaintiff deems this to be a "problem" because "since May 2013, the last time a medical professional evaluated [plaintiff's] claim, there are five years of records from the VA that have not been reviewed by a medical professional."  [Id. (citing AR at 745-976).]  He specifically notes the following evidence:  a November 30, 2012, brain MRI that demonstrated encephalomalacia in the right cerebellum; echocardiograms performed as a result of atrial fibrillation "demonstrating the presence [sic] mildly reduced global LV systolic function (43%) and severely hypokinetic mid inferior and lateral segments"; five additional years of treatment notes from July 2012 through September 2017, not previously considered [id. at 7 (citing AR at 745-976)]; and August 1, 2017, x-rays of the bilateral wrists and hands demonstrating

moderate radiocarpal and mild to moderate first carpometacarpal osteoarthritis in the left wrist, mild to moderate osteoarthritis in the left hand, mild radiocarpal and first carpometacarpal osteoarthritis in the right wrist, and mild osteoarthritis in the right hand.  [Id. at 7-8 (citing AR at 384-85, 778, 949-52).]  Plaintiff argues that instead of imposing additional limitations, the ALJ "relied on the opinions of physicians that never reviewed the evidence," and a "reasonable person would not assume that opinions rendered in 2012 and 2013, would be applicable to the same person many years later with additional impairments."  [Id. at 8 (citing Flores v. Colvin, 2017 WL 367408, at *6 (C.D. Cal. Jan 24, 2017) (finding substantial evidence did not support the ALJ's finding that Flores was limited to light work when the plaintiff provided evidence of new impairments not considered by the State agency or consultative examiners on whose opinions the ALJ relied); Quaco v. Berryhill, 2018 WL 4725651, at *4 (C.D. Cal. Sept. 30, 2018)).]  Plaintiff submits, therefore, that the ALJ's RFC assessment, limiting plaintiff to medium work despite additional impairments and treatment since the 2014 decision, "is . . . based on nothing more than her own analysis of the raw medical data in functional terms," which, as an ALJ, she is not qualified to do.  [Id. at 8 (citing Padilla v. Astrue, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008)).]  He suggests that "[i]n light of the evidentiary gap, the ALJ could have undertaken a series of measures such as ordering an updated consultative examination, calling a medical expert to testify at the hearing, or remanding the matter back to the State agency to make a new determination based on the subsequent medical evidence."  [Id. at 9 (citations omitted).]  He states that the ALJ "instead, undertook the one path that was not permitted, which was to formulate an RFC based on her analysis of the medical evidence for which she was not qualified," and the RFC determination, therefore, is not supported by substantial evidence and is the result of legal error. [Id.]

Defendant responds that the ALJ properly considered plaintiff's subjective complaints, the longitudinal medical records, and the medical opinions in the record.  [Id. at 10.]  He notes that the ALJ reviewed the medical treatment records "in detail"; found that the evidence "did not fully support Plaintiff's allegations, as he had significant gaps in treatment and relatively infrequent treatment overall"; found that the objective findings showed improvement and stable conditions;

noted that plaintiff had returned to work after the alleged onset date; and "then afforded significant weight to the opinions that were well supported and consistent with the record, and little weight to the VA clinic opinion from 2014 that was by contrast unsupported and inconsistent with the record." [Id. at 10-11 (citing AR at 26-28, 493-96).] Defendant observes that the 2014 and 2017 RFC determinations are *not* identical as argued by plaintiff, as the 2017 RFC also included limitations to frequent fine and gross manipulation bilaterally, while the 2014 decision had no manipulative limitations.[6] [Id. at 11.] Defendant also contends that despite plaintiff's submission of updated treatment evidence [id. (citing AR at 746-931, 934-76)], plaintiff only points to his new severe impairment of atrial fibrillation, and did not point to any new functional limitations as a result of that impairment, "much less what evidence supported them." [Id. at 11-12 (citations omitted).] Defendant states that the brain MRI and echocardiograms were already in the record relied on by the ALJ, and that plaintiff does not explain "how this evidence demonstrated any particular restrictions beyond those in the RFC." [Id. at 12 (citing AR at 384, 778).] He also notes that the ALJ considered the new imaging of plaintiff's wrists and hands, and determined that plaintiff was restricted to frequent fine and gross manipulation bilaterally.  [Id. (citing AR at 493, 495).] Defendant asserts that despite the passage of time since the consultative examiner and the State agency reviewing physicians had considered the record, plaintiff "did not point to any new evidence that undermined these doctors' opinions, but only notes that the record included several years of new treatment records on remand."  [Id.]  He states that this alone does not constitute error as the ALJ reviewed these records in assessing plaintiff's RFC, and plaintiff presented no contrary opinions on remand, "even though it was his burden to prove disability with medical evidence and opinions."  [Id. (citations omitted).]  Defendant submits that there is nothing in the record that "required that the ALJ take any of the additional, discretionary steps" suggested by plaintiff, and notes that plaintiff "also never requested that the ALJ call a medical expert or argued to the agency that an additional examination was required."  [Id. at 13-14 (citing AR at 529-31,

---

[6]    Defendant notes that the Court's prior remand related to a potential conflict with the DOT and not with the consideration of medical evidence or opinions.  [JS at 11 n.6.]

685).]

In reply, plaintiff contends that "[m]edical opinions rendered in 2012 and 2013, are not substantial evidence."  [Id. at 14 (citing Samoy v. Saul, 2019 WL 4688638, at *4 (E.D. Cal. Sept. 26, 2019) (holding that the ALJ's RFC determination was not supported by substantial evidence because recent MRI results were not reviewed by the two physicians who provided opinions regarding the plaintiff's functional limitations, yet the ALJ concluded that the MRI results were consistent with limitations on reaching and, because the ALJ was not qualified to interpret raw medical data in functional terms, he was required to retain a medical expert to evaluate this evidence)).]

**C.   ANALYSIS**

After reviewing the arguments of the parties and the evidentiary record, the Court finds the following:  (1) plaintiff's statements to the contrary, the 2014 and 2017 RFC determinations are *not* "the exact same," as the 2017 RFC determination imposed frequent fine and gross manipulation limitations bilaterally based, at least in part, on plaintiff's August 2017 wrist and hand x-ray findings showing mild to moderate osteoarthritis; (2) in 2017, the ALJ found the additional severe impairment of atrial fibrillation, but plaintiff did not point to any new limitations resulting from that impairment in his portions of the JS, and the ALJ did not discuss any such limitations; (3) the November 30, 2012, brain MRI and echocardiograms were in the record relied on by the ALJ in 2014 and 2017, and plaintiff provided no evidence of any functional limitations beyond those in the RFC with respect to those clinical records; and (4) in his portions of the JS, plaintiff pointed primarily to the fact of his newly diagnosed atrial fibrillation and the 2017 clinical findings regarding mild to moderate osteoarthritis in his bilateral wrists and hands as evidence undermining the 2012 opinion of the consultative examiner and the 2012 and 2013 opinions of the State agency reviewing physicians regarding plaintiff's functional limitations.

Notwithstanding the foregoing, although the ALJ in 2017 determined on remand that plaintiff has the new severe impairment of atrial fibrillation, i.e., an impairment that has "more than a minimal effect on an individual's ability to do basic work activities," she apparently determined that

plaintiff's severe impairment of atrial fibrillation did not result in any additional RFC limitations than those found in her 2014 decision, as none were included.  In contrast, with respect to plaintiff's severe impairment of arthritis, the ALJ specifically determined -- based at least in part on the August 2017 x-rays reflecting mild to moderate osteoarthritis in plaintiff's wrists and hands -- that plaintiff should be limited to frequent fine and gross manipulation bilaterally.

These determinations lack the support of substantial evidence.  As a lay person, an ALJ is "simply not qualified to interpret raw medical data in functional terms." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).  Neither is an ALJ permitted to "succumb to the temptation to play doctor and make [her] own independent medical findings." Banks v. Barnhard, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his or her own medical assessment beyond that demonstrated by the record).  This is exactly what the ALJ did here when she determined -- without the support of medical opinion evidence -- that plaintiff's new severe impairment of atrial fibrillation did not warrant any additional functional limitations, and that the new clinical evidence reflecting mild to moderate osteoarthritis in plaintiff's bilateral wrists and hands warranted a limitation to only frequent fine and gross manipulation bilaterally.

The ALJ also failed to offer an explanation as why the 2012 and 2013 opinions of the consultative examiner and the State agency reviewing physicians still warranted "significant weight," notwithstanding the severe impairment of atrial fibrillation being diagnosed after that time, and, as determined by the ALJ, a limitation to frequent fine and gross manipulation bilaterally being warranted as a result of the mild to moderate osteoarthritis reflected in the 2017 x-rays of plaintiff's wrists and hands.  All of this evidence arose after the time that the consultative examiner and the reviewing physicians provided their opinions.  When the record is inadequate to allow for proper evaluation of the evidence, the ALJ "has a duty to develop the record further." Ford v. Saul, 950 F.3d 1141, 1156 (9th Cir. 2020) (citation omitted).  In this case, the ALJ failed to develop the record by seeking a medical opinion as to the functional limitations -- if any -- resulting from plaintiff's newly diagnosed impairment of atrial fibrillation, and from his mild to moderate osteoarthritis in his wrists and hands as reflected in the 2017 x-rays.  Instead, she improperly

1    "played doctor" when she determined that plaintiff's atrial fibrillation warranted no limitations, and

2    interpreted raw medical data in the form of plaintiff's hand and wrist x-rays, in functional terms.

3            Remand is warranted on this issue.

4

5                                              **VI.**

6                            **REMAND FOR FURTHER PROCEEDINGS**

7            The Court has discretion to remand or reverse and award benefits.  Trevizo v. Berryhill, 871

8    F.3d 664, 682 (9th Cir. 2017) (citation omitted).  Where no useful purpose would be served by

9    further proceedings, or where the record has been fully developed, it is appropriate to exercise this

10   discretion to direct an immediate award of benefits.  Id. (citing Garrison, 759 F.3d at 1019).  Where

11   there are outstanding issues that must be resolved before a determination can be made, and it

12   is not clear from the record that the ALJ would be required to find plaintiff disabled if all the

13   evidence were properly evaluated, remand is appropriate.  See Garrison, 759 F.3d at 1021.

14           In this case, there are outstanding issues that must be resolved before a final determination

15   can be made.  In an effort to expedite these proceedings and to avoid any confusion or

16   misunderstanding as to what the Court intends, the Court will set forth the scope of the remand

17   proceedings.  First, with respect to limitations -- if any -- arising from plaintiff's atrial fibrillation and

18   mild to moderate bilateral hand and wrist osteoarthritis, the ALJ on remand shall order a

19   consultative examination or examinations, with the appropriate specialist(s) being provided with

20   all of plaintiff's medical records, and/or seek the testimony of a medical expert regarding the

21   limitations -- if any-- arising from these impairments.[7]  Second, the ALJ shall reassess the entire

22   medical record, including, if applicable, the new consultative examination(s), the testimony of a

23   medical expert, and all other medical evidence of record relevant to plaintiff's claim for DIB.  As

24   appropriate, the ALJ may request the treating and nontreating sources to provide additional

25

26   [7]    Nothing in this decision is intended to disrupt the ALJ's finding that plaintiff has at least the
     severe impairments of diabetes mellitus with neuropathy; arthritis; successful cataract surgery of
27   the right eye, but loss of some vision in the left eye; paresthesia and pain in both feet; rotator cuff
     and tendonitis of the right arm; dizziness and past strokes; degenerative disc disease; and atrial
28   fibrillation.

1  evidence about what plaintiff can still do despite his impairments.  The ALJ must explain the

2  weight afforded to each opinion and provide legally adequate reasons for any portion of an opinion

3  that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's

4  opinion over any of the others.  Third, the ALJ shall reassess plaintiff's credibility and provide

5  specific, clear and convincing reasons for discrediting his testimony, if warranted.  Fourth, based

6  on his or her reevaluation of the entire medical record, and credibility assessment, the ALJ shall

7  determine plaintiff's RFC.  Finally, the ALJ shall determine, at step five, with the assistance of a

8  VE if necessary, whether there are jobs existing in significant numbers in the national economy

9  that plaintiff can still perform.[8]  See Shaibi v. Berryhill, 883 F.3d 1102, 1110 (9th Cir. 2017).

10

11                                                  **VII.**

12                                          **CONCLUSION**

13         **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the

14  decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further

15  proceedings consistent with this Memorandum Opinion.

16         **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the

17  Judgment herein on all parties or their counsel.

18         **This Memorandum Opinion and Order is not intended for publication, nor is it**

19  **intended to be included in or submitted to any online service such as Westlaw or Lexis.**

20

21  DATED:  September 30, 2020        _____

22                                                  PAUL L. ABRAMS
                                            UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27  _____

28      [8]    Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to
    perform his past relevant work in the composite job of office machine repairer and bookkeeper.